IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| DR. MAHIN KHATAMI, | |
| Plaintiff, | |
| v. | Civil Action No. 11-CV-01769-AW |
| DR. CAROLYN COMPTON, | |
| Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Dr. Mahin Khatami brings this action against Defendant Dr. Carolyn Compton. Plaintiff asserts claims for malicious abuse of process and defamation. Presently pending before the Court are two motions: (1) the United States' Motion to Substitute and Dismiss ("Motion to Substitute"); and (2) the United States' Motion to Dismiss. The Court has reviewed the entire record and finds no hearing necessary. For the reasons that follow, the Court **GRANTS** both the United States' Motion to Substitute and Motion to Dismiss.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Dr. Carolyn Compton (Dr. Compton) is a Government scientist who serves as Director of the Office of Biorepositories and Biospecimen Research (OBBR). Lowy Decl. ¶ 1, Doc. No. 22-4. The OBBR is an office within the Center for Strategic Scientific Initiatives, itself within the Office of the Director of the National Cancer Institute (NCI). *Id.* The OBBR oversees three major scientific programs: (1) the Biospecimen Research Network; (2) the Cancer Human Biobank (caHUB); and (3) the Innovative Molecular Analysis Technologies for cancer. *Id.* These

1

programs comprehend multi-million-dollar, cutting-edge cancer initiatives. *See* Compl. ¶ 10, Doc. No. 2; Doc. No. 22-2 at 1.

Consonant with the cachet of these programs, Dr. Compton's educational and professional credentials are impressive. An academic physician, Dr. Compton holds both an MD and PhD from Harvard Medical School. Compton Decl. ¶ 2, Doc. No. 22-1.  Dr. Compton worked as a professor of pathology at Harvard Medical School and the Massachusetts General Hospital from 1980–1995, in addition to holding the title of Chair of the McGill University Health Center from 2000–2005. *Id.*

In conjunction with the abovementioned programs, the OBBR sponsors a variety of informational meetings. Lowy Decl. ¶ 1, Doc. No. 22-4. These meetings contemplate the cultivation of several goals, which one could categorize as educational, promotional, strategic, intellectual, and humanitarian. *See id.*; Compl. ¶¶ 9–10, Doc. No. 2; Doc. No. 22-2 at 1. As head of these programs, making presentations at such meetings was part and parcel of Dr. Compton's official duties. Lowy Decl. ¶¶ 1–2, Doc. No. 22-4; Doc. No. 22-2 at 1. Indeed, the Deputy Director of NCI portrays Dr. Compton as "content expert as well as the voice and face of these programs." Lowy Decl. ¶ 1, Doc. No. 22-4.

Plaintiff Dr. Mahin Khatami (Dr. Khatami) also touts an impressive resume. Dr. Khatami is a senior scientist trained in molecular and cell biology, protein chemistry, physiology, and immunology. *See* Compl. ¶ 6, Doc. No. 2. Dr. Khatami has over 100 publications, including peer-reviewed scientific journals, book chapters, and abstract proceedings presented at national and international conferences. *Id.* Dr. Khatami "worked at NCI from 1998 to 2009[] as a Health Scientists Administrator-Program Director at the Division of Cancer Prevention." *Id.* Dr.

Khatami retired in 2009 with the title of "Assistant Director for Technology Program Development, Office of Technology and Industrial Relations." *Id.* ¶ 4.

Notwithstanding her credentials, Dr. Khatami retired from NCI under acrimonious circumstances. During her tenure at NCI, Dr. Khatami filed numerous complaints of discrimination, retaliation, and noncompliance before various administrative boards and agencies, including the EEOC. *See* Doc. No. 22-8 at 1–2. Dr. Compton was Dr. Khatami's direct supervisor for at least a six-month stretch, and Dr. Khatami named Dr. Compton in at least one such Complaint. *See* Compton Aff. § 3, Doc. No. 14-1; Doc. No. 22-2 at 1. On November 2, 2009, Dr. Khatami "settled numerous pending complaints of discrimination and retaliation that were before the EEOC and [Merit Systems Protection Board]." Doc. No. 22-8 at 2. Dr. Khatami's settlement called for her retirement. *Id.*

On February 18, 2010, Dr. Compton made a presentation about caHUB at an NCI Board of Scientific Advisors meeting. *Id.* Dr. Khatami attended the meeting and stared menacingly at Dr. Compton throughout her presentation. Doc. No. 8-2 at 10:3–13. When Dr. Compton exited the room upon finishing her presentation, Dr. Khatami followed her. *Id.* at 10:25–11:4. Dr. Compton's colleagues encircled her to keep Dr. Khatami away from her. *See id.*; Doc. No. 22-2 at 1.

On the following day, Dr. Compton presented about caHUB at a four-hour public conference and webcast. Doc. No. 22-2 at 1. Dr. Khatami attended and, during a Q&A session, stormed the microphone and shot into a screed in which she likened caHUB to a scientific Ponzi scheme and accused Dr. Compton of harboring a "five year conspiracy against [her]." Doc. No. 8-3 at 2:7–9, 3:20–23. Dr. Khatami's screed came to a screeching halt when an audience member approached her and removed her from the microphone. Doc. No. 22-2 at 1.

In the wake of this incident, Dr. Compton approached Jason Donaldson, the Deputy Executive Officer of NCI. Compton Decl. ¶ 7, Doc. No. 22-1; Doc. No. 22-2 at 2. Dr. Compton asked Donaldson for NCI's help to protect her from Dr. Khatami's harassment. Compton Decl. ¶ 7, Doc. No. 22-1; Doc. 22-2 at 2. Donaldson told her that legal barriers prevented NCI from assisting her and that, instead, she would have to seek a Peace Order on her own. *See* Compton Decl. ¶ 7, Doc. No. 22-1; Doc. 22-2 at 2. On February 25, 2012, aided by counsel, Dr. Compton filed a Petition for a Peace Order against Dr. Khatami. Doc. No. 8-4. A Temporary Peace Order was issued on the same day and was later extended to April 9, 2010. Doc. No. 8-5.

On April 9, 2010, a state court judge held a hearing on Dr. Compton's Petition. Doc. No. 8-2. The judge declined to extend the Peace Order. *Id.* at 36:22–24. The judge reasoned that Dr. Khatami had not received the requisite warning "to back off, to stop." *Id.* at 37:16–17. The judge gave her such warning. *Id.* at 38:2–3.

On February 22, 2011, Dr. Khatami filed the instant Complaint in the Montgomery County Circuit Court. Compl., Doc. No. 2. In her Complaint, Dr. Khatami asserts claims for (1) malicious abuse of process and (2) defamation. *Id.* at 6–7. Proceeding pro se, Dr. Compton answered on June 8, 2011. *See* Doc. No. 4. Dr. Compton's pro se answer is informal and is more akin to a personal letter. *See id.* On June 28, 2011, the United States removed the case. Doc. No. 1. Contemporaneously, the United States filed a Motion to Substitute and Dismiss ("Motion to Substitute"). Mot. Sub., Doc. No. 6. In its Motion to Substitute, the United States certifies that Dr. Compton was acting within the scope of her employment at all times relevant to Dr. Khatami's claims. *See* Doc. No. 6-2. Therefore, the United States urges the Court to substitute it for Dr. Compton as a defendant.

A few days later, the United States filed a Motion to Dismiss. Mot. Dismiss, Doc. No. 8. In its Motion to Dismiss, the United States makes a two-step argument. First, the United States fleshes out the argument that it made in its Motion to Substitute; that Dr. Compton acted within the scope of her employment when she sought the Peace Order. The second step of the United States' argument bifurcates. Under the first branch, the United States notes that Dr. Khatami failed to file an administrative claim and urges the Court to dismiss the action for failure to exhaust administrative remedies. In the alternative, the United States insists that the FTCA expressly excludes the claims that Dr. Khatami asserts.

## II.      STANDARD OF REVIEW

"There are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction," *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982), only one of which is relevant to the subject-matter jurisdiction attack at issue. "[I]f the governmental entity challenges jurisdiction under Rule 12(b)(1) . . . the court is free to consider exhibits outside the pleadings 'to resolve factual disputes concerning jurisdiction.'" *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002) (quoting *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995)). In other words, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williams*, 50 F.3d at 304 (citation and internal quotation marks omitted). These authorities are consistent with the Supreme Court's obiter dictum that "if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citations omitted). "The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)" on FTCA grounds. *Williams*, 50 F.3d at 304 (citation omitted).

### III. LEGAL ANALYSIS

### A. Motion to Substitute

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "The FTCA effects a limited waiver of the United States' sovereign immunity for 'personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Id.* at 651 (citing 28 U.S.C. § 1346(b)(1)). In other words, the FTCA generally waives the United States' sovereign immunity with respect to common law torts that federal employees commit while acting within the scope of employment. *See id.*; *Jamison v. Wiley*, 14 F.3d 222, 226 n.1 (4th Cir. 1994) (citation omitted). Thus, a preliminary inquiry in many FTCA cases is whether the federal employee acted within the scope of her employment when she committed the alleged tort. *Kerns v. United States*, 585 F.3d 187, 194 (4th Cir. 2009). This inquiry is jurisdictional. *Id.*

"When a federal employee is sued, the United States Attorney, acting on behalf of the Attorney General, must certify whether that employee was in fact acting within the scope of his or her employment at the time of the alleged tortious act." *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997) (citing 28 U.S.C. § 2679(d)(1)). "When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." *Gutierrez de Martinez v. Drug Enforce. Admin.*, 111 F.3d 1148, 1153 (4th Cir. 1997) (citing cases); *see also Maron*, 126 F.3d at 322–23 (citing cases). "Moreover, the plaintiff's submission must be specific evidence or the forecast of specific evidence that

contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." *Gutierrez de Martinez*, 111 F.3d at 1155. District courts must not authorize discovery on the scope of employment question unless the plaintiff carries this burden.[1] *See id.*

Maryland state law governs the scope-of-employment question. *See* 28 U.S.C. § 1346(b)(1); *Maron*, 126 F.3d at 323–24. The leading case in Maryland concerning the scope-of-employment question is *Sawyer v. Humphries*, 587 A.2d 467 (Md. 1991). In *Sawyer*, the Court of Appeals of Maryland enunciated that "[t]he general test . . . for determining if an employee's tortious acts were within the scope of his employment is whether they were in furtherance of the employer's business and were 'authorized' by the employer." *Id.* at 470. In this context, "'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders." *Id.* (citation and some internal quotation marks omitted). Courts assess whether an employee's conduct furthers his master's business under the totality of the circumstances. *See id.* at 471–72. The following triad of factors bears on this assessment: (1) whether the employer should expect or foresee the conduct; (2) whether the conduct is similar to the conduct the employer authorizes; and (3) whether the conduct is close in time and space to the employee's job duties. *See id.* (citing primary and secondary authority).

In this case, these factors weigh heavily in favor of a finding that Dr. Compton acted within the scope of her employment when she sought the Peace Order. As for the first factor, the

---

[1] In *Maron*, *supra*, the court held that the United States Attorney's certification "satisfies the government's prima facie burden but does not carry any evidentiary weight unless it details and explains the bases for its conclusions." 126 F.3d at 323. Although the United States' certification in this case is quite conclusory, *see* Doc. No. 6-2, the United States has included ample evidence with both its Motion to Substitute and Motion to Dismiss. Likewise, the United States' memoranda in support and accompanying reply briefs thoroughly explain the bases for its determination that Dr. Compton acted within the scope of her employment.

record evidence indicates that NCI should have expected or foreseen that Dr. Compton would pursue the Peace Order. It is uncontroverted that Dr. Compton first approached Mr. Donaldson, an NCI executive, about the prospect of protection from Dr. Khatami. Dr. Compton did not seek the Peace Order until Mr. Donaldson denied her request. Furthermore, Dr. Compton sought the Peace Order upon Mr. Donaldson's specific recommendation. Moreover, Dr. Compton declares that Mr. Donaldson told her that NCI would enforce a Peace Order if she obtained one. Compton. Decl. ¶ 7, Doc. No. 22-1. Therefore, NCI must have expected or foreseen her conduct.

For the same reasons, factor two counsels for a finding that Dr. Compton was acting within the scope of her employment. Because Dr. Compton pursued the same course of action that NCI suggested, her conduct was unquestionably similar to the conduct the employer authorized. Indeed, for all intents and purposes, it was equivalent.

Although NCI did not officially authorize her conduct, authorized bears a broader signification in the context of the scope-of-employment question. *Sawyer* teaches that the true inquiry is "whether the act was incident to the performance of the employee's duties entrusted to him by the master, even though in opposition to his express and positive orders." Here, Dr. Khatami does not—and cannot—dispute that Dr. Compton was a high-ranking official at NCI who was the face and voice of far-reaching, multi-million-dollar public health initiatives. Nor can Dr. Khatami dispute that the alleged harassment occurred while Dr. Compton was performing the key official duty of presenting about caHUB at a conference. Dr. Compton has consistently declared that the alleged harassment interfered with her capacity to perform her vital job responsibilities. *See, e.g.*, Compton Aff. § 6, Doc. No. 14-1 ("I just wanted to do my work at NCI without fear of harassment or fear of my safety."); *id.* § 12 ("I just want her to leave me alone without me fearing for my safety or fear of my not being able to carry out my job without

harassment and attempts to defame me."); Doc. No. 22-2 at 2 ("I sought only to protect myself from Dr. Khatami's harassing actions to be able to carry out my professional duties without concern or fear."). Therefore, considering that an NCI executive first recommended that she pursue a Peace Order, Dr. Compton's conduct was incident to the performance of her job duties.

Factor three also cuts in Dr. Compton's favor. Dr. Compton sought the Peace Order on the heels of Dr. Khatami's harangue. The two disruptive incidents that prodded Dr. Compton to pursue the Peace Order occurred on February 19 and 20, 2010. Dr. Compton approached Mr. Donaldson right after the incident. *See* Compton Decl. ¶ 7, Doc. No. 22-1; Doc. 22-2 at 2. Then, just five days later, Dr. Compton filed the Petition for a Peace Order. Doc. No. 8-4. A five-delay is immaterial for the purposes of such a consequential decision, not least because Dr. Compton sought the advice of counsel. Furthermore, Dr. Compton's conduct is close to her job duties spatially because she followed the precise course of action that Mr. Donaldson recommended. Additionally, Dr. Compton declares that she had to apply for the Peace Order during work hours and that NCI staff knew that she was leaving work to pursue it. Compton Decl. ¶ 8, Doc. No. 22-1. Therefore, Dr. Compton's conduct was close in time and space to her job duties. In essence, she went from point A to point B. There was no frolic and detour.

Dr. Khatami presses two primary counterarguments. First, she observes that Dr. Compton has, inconsistent with the abovementioned declarations, stated that she sought the Peace Order as a private citizen. This sole observation, in Dr. Khatami's estimation, suffices to carry her evidentiary burden concerning whether Dr. Compton's conduct was in the scope of her employment. Second, Dr. Khatami asserts that the scope-of-employment issue is inextricably intertwined with the merits of her claims. Therefore, she concludes that the Court would

improperly dismiss her claims absent discovery under *Kerns v. United States,* 585, F.3d 187 (4th Cir. 2009). Both of these counterarguments are unconvincing.

Dr. Khatami takes Dr. Compton's seemingly inconsistent statement that she sought the Peace Order as a private citizen out of context. *See* Compton Aff. § 6, Doc. No. 14-1 (stating, in an EEO affidavit, that she "sought a temporary Peace Order against [Dr. Khatami] as a private citizen"). Dr. Compton clarifies in the same section of her EEO affidavit that "**NCI told [her] clearly** that . . . if [she] wanted to restrict [Dr. Khatami] from defaming [her] publicly then [she] would have to obtain a peace order as a private citizen). *Id.* (emphasis added). In the same section, Dr. Compton adds that "she just wanted to do [her] **work at NCI** without fear of harassment or fear of [her] safety." *Id.* (emphasis added). Dr. Compton's pro se answer in the initial state court proceeding strengthens the inference that Dr. Khatami has taken her isolated statement out of context. In this pro se "answer," which is more appropriately viewed as a letter, Dr. Compton writes that "**Mr. Donaldson told me** that . . . the only legal avenue open to me . . . would be a Peace Order, acquired by me as a private citizen." Doc. No. 22-2 at 2 (emphasis added). Dr. Compton states in the same letter that "[s]ince **the NCI had told me** that [it] couldn't prevent her access to me **while performing my duties** . . . I sought the Peace Order only to protect myself." *Id.* (emphasis added). In view of this countervailing evidence, the superficially inconsistent statement lacks significance.

Dr. Khatami's assertion that the scope-of-employment issue is inextricably intertwined with the merits of her claims is similarly unavailing. Dr. Khatami appears to premise this assertion on an unduly broad reading of *Kerns*. Analytically, the *Kerns* court proceeded in two steps. First, the court "ascertain[ed] the proper legal framework for resolving a Rule 12(b)(1) motion to dismiss[] when the jurisdictional facts are inextricably intertwined with the merits."

585 F.3d at 192. Second, the court "assess[ed] whether, in the context [of the case], the scope-of-employment issue [was] an essential aspect of both the jurisdictional question and the merits, rendering dismissal under Rule 12(b)(1) inappropriate." *Id.* In other words, the legal framework for discovery that *Kerns* announces does not apply unless there is a showing that the jurisdictional facts are inextricably intertwined with the merits. *See id.*

Concordantly, the *Kerns* court addressed whether the scope-of-employment issue was inextricably intertwined with the merits of the FTCA claim at issue. *See id.* at 193–94. The dispute in *Kerns* stemmed from a traffic accident in which the plaintiff alleged that a federal employee negligently caused the death of the plaintiff's husband. *See id.* at 189. The plaintiff sued the United States, not the employee. *See id.* The United States moved to dismiss under Rule 12(b)(1) on the basis that the employee was acting outside the scope of her employment when the accident occurred. *Id.* at 190.

The court held that the jurisdictional elements of the plaintiff's FTCA claim were inextricably intertwined with the underlying merits. *See id.* at 194. In coming to this conclusion, the *Kerns* court noted that the FTCA's waiver of sovereign immunity applies only with respect to common law torts that federal employees commit while acting within the scope of employment. *See id.* The court further noted that state law provides the underlying cause of action in FTCA cases and that, under Maryland law, an employer is liable for the tortious acts of its employee under respondent superior only if the employee committed the negligent acts during the scope of her employment. *See id.* Therefore, the Court concluded that the scope-of-employment issue was at once (1) jurisdictional and (2) an element of the plaintiff's FTCA claim. *See id.* Therefore, because the scope-of-employment issue determined both jurisdiction and the underlying merits

of the plaintiff's claim, the scope-of-employment issue and the underlying merits were inextricably interwoven. *See id.*

Taken at face value, the *Kerns* court's analysis does not apply to Dr. Khatami's claims. In this case, unlike in *Kerns*, the scope-of-employment issue is not an element of Dr. Khatami's malicious abuse of process and defamation claims. That is, dissimilar to the plaintiff in *Kerns*, Dr. Khatami does not have to prove that Dr. Compton was acting within the scope of her employment to prevail on her claims. Granted, the United States has moved to substitute itself as the defendant on the ground that Dr. Compton acted within the scope of her employment when she sought the Peace Order. Yet, while Dr. Khatami may have to prove otherwise to withstand the Motion to Substitute, this burden is peripheral to the underlying merits of Dr. Khatami's claims. In contrast to *Kerns*, Dr. Khatami's failure to prevail on her scope-of-employment argument (i.e. that Dr. Compton was acting outside the scope of her employment) does not vitiate Dr. Khatami's causes of action. On the contrary, Dr. Khatami can still sue the United States under the FTCA on a respondeat superior theory. Although the United States has (successfully) moved to dismiss on other grounds, *see infra* Part III.B, these grounds are extraneous to the scope-of-employment inquiry. Accordingly, *Kerns* is inapposite to the case *sub judice*.

What is more, substitution would be in order even if the scope-of-employment issue were inextricably enmeshed with the merits underlying Dr. Khatami's claims. In such cases, *Kerns* dictates that dismissal under 12(b)(1) before discovery is improper "unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial." *See* 585 F.3d at 195. In this case, to reiterate, the sole argument Dr. Khatami has raised to rebut the United States' certification that Dr. Compton acted within the scope of her employment is Dr. Compton's isolated statement that

she sought the Peace Order as a private citizen. As explained above, this statement is immaterial and fails to create a genuine issue whether Dr. Compton was acting outside the scope of her employment during the relevant times. Accordingly, Dr. Khatami's counterarguments are without merit.

Nor do any equitable considerations counsel against granting the United States' Motion to Substitute. Dr. Khatami stresses that Dr. Compton's pursuit of the Peace Order was not "based in reality" because of Dr. Khatami's advanced age (sixty-seven) and small stature (4'10"). Pl.'s Opp'n Mot. Dismiss 2, Doc. No. 15-1. Nevertheless, the record reflects that Dr. Khatami engaged in a course of conduct that one can fairly characterize as harassment. This course of conduct rose to a crescendo at the hearing on Dr. Compton's Petition for a Peace Order, at the conclusion of which the judge cautioned Dr. Khatami to "to back off."

Subsequently, Dr. Khatami filed an EEO complaint against, inter alia, Dr. Compton. Doc. No. 22-6 at 2. Dr. Khatami's latest in a long line of EEO complaints sounds in retaliation and is based in part on this course of events. *See id.*; Doc. No. 22-8. At least on a conceptual level, filing a charge of employment discrimination presupposes that the challenged conduct occurs in the scope of the respondents' employment. The declarations in Dr. Khatami's appeal from the agency's dismissal of her EEO charge state the obvious. *See, e.g.*, Doc. No. 22-8 at 4 (emphasis added) (stating that her "reputation . . . was destroyed by the action taken by the various **agents of the employer**"). This conceptual incongruity gives the Court the impression that Dr. Khatami is trying to have her cake and eat it too. As this Court has expressed elsewhere, it is a truth universally acknowledged that she who comes into equity must come with clean hands. Here, despite her advanced age and short stature, the Court cannot help but to notice the cake on Dr. Khatami's hands.

***

One can distill the preceding discussion into a pentad of propositions: (1) the United States has certified that Dr. Compton acted within the scope of her employment when she sought the Peace Order; (2) the record evidence indicates as much; (3) the isolated inconsistent statement is insufficient to counteract this evidence; (4) *Kerns* is distinguishable; and (5) equity is not on Dr. Khatami's side. For these reasons, the Court grants the United States' Motion to Substitute. Consequently, the Court dismisses Dr. Compton as a defendant.

**B.     Motion to Dismiss**

   *1.     Failure to Exhaust Administrative Remedies*

The United States asserts that Dr. Khatami failed to exhaust her administrative remedies under the FTCA before filing suit. "It is well established that the United States Government, as sovereign, is immune from suit unless it consents to be sued." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990). "The terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "Congress created a limited waiver of sovereign immunity in the FTCA." *Id.* (citing 28 U.S.C. §§ 2671–80). "This waiver permits suit only on terms and conditions strictly prescribed by Congress." *Id.* (citing *Honda v. Clark*, 386 U.S. 484, 501 (1967)).

One such term "requires that a claim be 'presented' to the appropriate agency within two years after the claim accrues." *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994) (citing 28 U.S.C. § 2401(b)). The FTCA "also requires that before an action may be commenced in

court, the claimant must 'present' his claim to the appropriate administrative agency for determination." *Id.* (citing 28 U.S.C. § 2675(a))."'[T]he requirement of filing an administrative claim is jurisdictional and may not be waived.'" *Id.* (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir.1986)). In other words, a FTCA plaintiff's failure to file an administrative claim deprives courts of subject-matter jurisdiction over the claim. *See, e.g.*, *Logan v. United States*, 851 F. Supp. 704, 707 (D. Md. 1994).

In the instant action, it is undisputed that Dr. Khatami failed to file an administrative claim. Hawkins Decl., Doc. No. 8-7. Therefore, the Court dismisses Dr. Khatami's claims for want of subject-matter jurisdiction.

   2.    *The FTCA's Express Preclusion of the Claims in Question*

The FTCA provides that the United States' limited waiver of sovereign immunity for torts that federal employees commit within the scope of their employment does not apply to "[a]ny claim arising out of . . . **abuse of process**, libel, [or] slander." 28 U.S.C. § 2680(h) (emphasis added). As the terms libel and slander suggest, § 2680(h) also bars defamation claims. *Talbert v. United States*, 932 F.2d 1064, 1067 (4th Cir. 1991). As the FTCA expressly excludes Dr. Khatami's abuse of process and defamation claims, the Court dismisses these claims with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** both the United States' Motion to Substitute and Motion to Dismiss. A separate Order follows.

|  |  |
|---|---|
| February 13, 2012 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |

16